# EXHIBIT A

RECEIVED FOR FILING
KITSAP COUNTY CLERK
MAY - 2 2018
ALISON H. SONNTAG

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KITSAP COUNTY

| | |
|---|---|
| JOSHUA DEATH,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>TAMMY ANNE MABRY d/b/a NEW WAY VAPORS; LG CHEM, Ltd., a South Korean company; and DOES 1-100, inclusive,<br><br>　　　　　Defendants. | No. 18-2-01198-18<br><br>**AMENDED SUMMONS**<br>**(TWENTY DAY)** |

TO:　Defendant: TAMMY ANNE MABRY d/b/a NEW WAY VAPORS

A lawsuit has been started against you in the above-entitled court by the Plaintiff herein. Plaintiff's claims are stated in the written Amended Complaint for Damages, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the person signing this Summons within twenty (20) days after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the Plaintiff is entitled to what they ask for because you have not responded. If you serve a Notice of Appearance on the

AMENDED SUMMONS – 1

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the Plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this Summons. Within 14 days after you serve the demand, the Plaintiff must file this lawsuit with the court, or the service upon you of this Summons and Amended Complaint for Damages will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served in time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

DATED this 1st day of May, 2018.

LAW OFFICES OF JAMES S. ROGERS

*[signature: Heather Cover]*

James S. Rogers, WSBA #5335
Heather M. Cover, WSBA #52146
Attorneys for Plaintiff

AMENDED SUMMONS – 2

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

RECEIVED FOR FILING
KITSAP COUNTY CLERK
MAY - 2 2018
ALISON H. SONNTAG

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR KITSAP COUNTY

| | |
|---|---|
| JOSHUA DEATH,<br><br>                Plaintiff,<br><br>    v.<br><br>TAMMY ANNE MABRY d/b/a NEW WAY VAPORS; LG CHEM, Ltd., a South Korean company; and DOES 1-100, inclusive,<br><br>                Defendants. | No. 18-2-01198-18<br><br>**AMENDED COMPLAINT FOR DAMAGES** |

PLAINTIFF ALLEGES AS FOLLOWS:

## I. INTRODUCTION

1. Plaintiff Joshua Death ("Joshua") purchased electronic cigarette component parts during the course of 2015. The defendants are the manufacturers, wholesalers, distributors, and retailers of the electronic cigarette and related parts. On or about May 19, 2016, Joshua was sitting in his car getting ready to leave his parents' house in Rapid City, South Dakota, when an electronic cigarette suddenly *exploded* in his hand and shot into his abdomen. The explosion resulted in third degree burns to Joshua's hand and abdomen.

AMENDED COMPLAINT FOR DAMAGES – 1

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224



2. Electronic cigarettes, or e-cigarettes[1] as they are more commonly known, claim to provide a tobacco-free alternative to the traditional cigarette. E-cigarettes offer doses of nicotine in a vaporized solution which gives users a physical sensation similar to smoking tobacco, supposedly without the harmful effects. E-cigarettes also offer non-nicotine flavors in enticing varieties, such as gummy bear, vanilla, and blueberry-pancake. Using e-cigarettes is known as "vaping" and users are known as "vapers". In addition to the e-cigarette products that Olaf purchased and used, Defendants manufacture, design, and sell a variety of other e-cigarette products across Washington.

3. All e-cigarettes function basically the same way. They consist of three parts: (1) a tank or cartridge ("cartridge"); (2) a battery, which heats the liquid nicotine and other chemicals (often called "juices" or "e-liquids") and are held within the cartridge; and (3) an atomizer, which

---

[1] These products are also referred to as electronic nicotine delivery systems (ENDS), personal vaporizers (PVs), electronic smoking devices, vapor products, and alternative nicotine delivery devices, among others.

AMENDED COMPLAINT FOR DAMAGES – 2

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

converts the e-liquid to vapor that the user then inhales. Some e-cigarettes use closed-system cartridges-cartridges that are prefilled with the e-liquid by the manufacturer before the purchase. Others use open-system cartridges-cartridges that are manually refilled with e-liquid by the user after the purchase. The batteries used in e-cigarettes are cylindrical lithium-ion batteries. Some batteries are rechargeable, and others are disposable. Finally, e-cigarettes are produced in pen form (modeled after the traditional cigarette) and in mod form (mechanical or electronical devices that are heavier and carry a much higher capacity for juice and vapor).



Electronic Cigarette Fires and Explosions. Federal Emergency Management Agency. U.S. Fire Administration. Oct. 2014.

4. The lack of legislative and judicial oversight in the e-cigarette industry has created serious risk of consumers who buy e-cigarettes as a safer alternative to traditional cigarettes; these products do not include adequate instructions, proper warnings, or compatible components. Joshua's excruciating pain, burns, and ongoing limitations to his hand and abdomen are the result of the Defendants' failure to make their products safe before introducing them into the market for use.

//

//

AMENDED COMPLAINT FOR DAMAGES – 3

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

## II. THE PARTIES

5. Plaintiff Joshua Death, an individual, is and at all relevant times was, a resident of the State of Ohio, County of Butler.

6. Plaintiff alleges that upon information and belief, and at all times material hereto, Defendant, Tammy Anne Mabry was a resident of Kitsap County, Washington and did business as New Way Vapors ("New Way"). Upon further information and belief, New Way was the alter ego and/or joint venturer of other corporations, entities, and business interests, each of which is conducting business in the State of Washington, County of Kitsap, City of Port Orchard. Defendant New Way sold e-cigarette batteries, including the battery purchased and used by Joshua that is the subject of this lawsuit.

7. Plaintiff further alleges that New Way had a place of business located in the State of Washington, County of Kitsap, City of Port Orchard. Specifically, it was located at 1551 SE Piperberry Way, Suite 101, Port Orchard, WA 98366 at the time Plaintiff purchased the subject e-cigarette battery.

8. LG Chem. Ltd. ("LG") is a South Korean company with its principal place of business in Seoul, South Korea.

9. The battery used with Plaintiff's e-cigarette as alleged in this Complaint was manufactured by LG.

10. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1-100, inclusive, and each of them, are unknown to Plaintiff, who thereby sues these Defendants by such fictitious names, and will ask leave of this court to amend this complaint when the true names are ascertained.

11. Plaintiff is informed and believes and on that basis alleges that each Defendant

AMENDED COMPLAINT FOR DAMAGES – 4

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

named herein as a Doe is responsible in some manner for the events and happenings referred to herein which proximately caused injury to Plaintiff as hereinafter alleged.

12. Plaintiff is informed and believes and on that basis alleges that at all times mentioned herein the Defendants, and each of them, were the agents, servants, employees, and joint venturers of each other, and were as such acting within the course, scope and authority of said agency and employment and or joint venture, and that each and every Defendant, when acting as a principal, was negligent and reckless in the selection, hiring, entrustment and supervision of each and every other Defendant as an agent, servant, employee, or joint venturer.

## III. JURISDICTION & VENUE

13. The Superior Court of Kitsap County, State of Washington, has subject matter jurisdiction over this action pursuant to RCW 2.08.010.

14. Venue is proper in Kitsap County, Washington pursuant to RCW 4.12.020 because the cause of action or some part thereof arose in Kitsap County.

## IV. FACTUAL BACKGROUND

A. **Background of e-cigarettes**

15. The explosion of Joshua's e-cigarette product which caused burns and traumatic injuries to Joshua is not a novel occurrence. There is mounting evidence that the explosions and fires caused by e-cigarettes are increasing and have injured many consumers.[2]

16. E-cigarettes differ from traditional cigarettes in a critical way: the e-cigarette is

---

[2] Weisbaum, Herb. What's Causing Some E-Cigarette Batteries to Explode? NBC News. Mar. 8, 2016. http://www.nbcnews.com/business/consumer/what-s-causing-some-e-cigarette-batteries-explode-n533516.

AMENDED COMPLAINT FOR DAMAGES – 5

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

1  battery-operated and uses a heating element to produce vapor, while the traditional cigarette has no electronic component. While both products may produce a similar physical sensation, e-cigarettes pose an additional danger—the battery-powered heating element can cause, and has caused, explosions, fires, and serious injury. Lithium-ion batteries, commonly used in all types of e-cigarettes, have an inherent risk of fire and explosion.[3] Combining lithium-ion batteries with a heating element, as done in e-cigarettes, poses serious dangers and risks.

17.  E-cigarettes are more dangerous than other products that contain lithium batteries because the e-cigarette is most often a cylindrical device. There are different methods to protect against these batteries, but because of a lack of regulation, the protections are left up to the e-cigarette manufacturers. (*Id.* at 6.)

18.  The inherent danger of lithium-ion batteries lies in the "poor design, use of low quality materials, manufacturing flaws and defects, and improper use and handling [which] can all contribute to a condition known as 'thermal runaway', whereby the internal battery temperature can increase to the point of causing a battery fire or explosion." (*Id.* citing Brown CM, Cheng JM. *Electronic Cigarettes: Product Characterization and Design Considerations*, Tobacco Control, 2014.) The medical case report noted that as the industry grows, "the potential for serious burn injuries related to device malfunction is of concern." (*Spontaneous Electronic Cigarette Explosion: A Case Report*, American Journal of Medical Case Reports, 2015, Vol. 3, No. 4, 93-94, 94.)

19.  The e-cigarette industry carries mass appeal to manufacturers, distributors, and sellers because the cost of production is low and the return on profits is high. Currently,

---

[3] Lithium-ion batteries have been referred to as the "mini bomb in your pocket" due to its known ability to spontaneously ignite (*See* Ben D., Ma B., Liu L, et al, *Unusual Burns with Combined Injuries Caused by Mobile Phone Explosion*: Watch Out for the "mini Bomb!", J Burn Care Res 2009 Nov-Dec; 30(6): 1048.)

AMENDED COMPLAINT FOR DAMAGES – 6

manufacturers, distributors, and sellers are not required to spend *any* money on testing or to otherwise ensure the safety of e-cigarette products. Most United States' distributors choose to import e-cigarettes from China because of the low cost and non-existent quality control.

20. E-cigarettes continue to be placed into the stream of commerce without any federal regulatory, manufacturing, and quality control standards. Proposed federal regulations only address the *tobacco* aspect of e-cigarettes, but completely fail to address the *manufacturing* and *quality control* aspects of these products. As was noted in October 2014 and as is the case now, "no regulation, code, or law applies to the safety of the electronics or batteries in e-cigarettes. While many consumer products are required to be tested by a nationally recognized test laboratory...there are no requirements that e-cigarettes be subjected to product safety testing." (United States Fire Administration, *Electronic Cigarette Fires and Explosions*, October 2014, at 2. (emphasis added).)

21. These e-cigarette products, such as what was purchased and used by Joshua, continue to be placed into the stream of commerce despite being untested and unsafe. E-cigarettes will continue to cause injuries from explosions and fire as suffered by Joshua unless and until those placing them in the stream of commerce are held accountable.

**B.     The explosion that changed Joshua's life**

22. Joshua lives in Hamilton, Ohio. Joshua is self-employed as a Professional Gamer and Painter.

23. Joshua started vaping caffeine to stay awake while he traveled for work. He purchased the batteries for his e-cigarette from New Way in Port Orchard, Washington in August of 2015, specifically instructing the employee that he wished to purchase safe batteries and component parts. The batteries were MXJO IMR 18650 batteries. The rest of his e-cigarette

1 products were purchased from various stores in South Dakota and Washington. On or around July
2 of 2015, Joshua won "The Infected" Mod in a raffle at a Vape Show in Tacoma, WA.

24. The MXJO IMR18650 batteries were manufactured by Defendant LG.

25. Joshua's e-cigarette products including the batteries were manufactured, wholesaled, distributed, and retailed by Defendants and Does 1-100.

26. On or about May 19, 2016, Joshua was sitting in his car getting ready to leave his parents' house in Pennington County, South Dakota, when his electronic cigarette suddenly *exploded* in his hand, shooting the battery out of the E-Cig cylinder and into his abdomen. The top of the E-Cig went through the rearview mirror destroying it and into the windshield with enough force to crack the windshield.

27. With his ears ringing, he was disoriented and dizzy trying to both get out of his car as quickly as possible, as well as check on the safety of his service dog, Zyuba.

28. Joshua stumbled inside to run cold water over his burned hand, his abdomen already in extreme pain.

29. Inside, he couldn't hear anything but the ringing in his ears. The pain was so bad he had to call his wife, who immediately took him to the emergency room.

30. The explosion resulted in third degree burns to Joshua's hand and abdomen. The ER doctor indicated that there was a strong probability of nerve damage and loss of mobility to Joshua's hand.

31. Joshua subsequently followed-up at the VA Black Hills Health Care System.

32. The VA physicians confirmed that there will likely be nerve damage and loss of mobility to Joshua's dominate hand.

33. The fire and Joshua's resulting injuries were caused by the defective E-Cig

1  Products as well as Defendants' negligence.

2  34.   Joshua still struggles with physical and emotional injuries he sustained in the explosion.

## V. FIRST CAUSE OF ACTION
### (Products Liability)

35.   Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full in this cause of action.

36.   At all times mentioned herein, Defendants New Way, LG Chem. Ltd., and Does 1-100, inclusive, were engaged in the business of manufacturing, fabricating, designing, assembling, distributing, selling, inspecting, warranting, leasing, renting, retailing, wholesaling, and advertising the E-Cig Products that Joshua purchased and used.

37.   On May 19, 2016 as Joshua was using the E-Cig Products in a reasonably foreseeable and intended manner, the MXJO Battery suddenly exploded in Joshua's hand, resulting in third degree burns to his hand and abdomen.

38.   In violation of the Washington Product Liability Act, RCW 7.72, et seq., at the time the E-Cig Products left control of the manufacturer, they were defective and not reasonably safe for reasons that include, but are not limited to, the following:

   a. The E-Cig Products were not reasonably safe in their design, resulting in excessive overheating of the E-Cig Products, causing them to catch fire in the course of intended use and in the course of non-use;

   b. The E-Cig Products were unsafe to an extent beyond that which would be contemplated by an ordinary user;

   c. At the time of manufacture, the likelihood that the E-Cig Products would cause injury or damage similar to that suffered by Joshua, and the seriousness of such

injury or damage, outweighed the burden on the manufacturer to design a product that would have prevented Joshua's injuries and outweighed the adverse effect that an alternative design that was practical and feasible would have on the usefulness of the E-Cig Products;

    d.    The E-Cig Products were not reasonably safe because adequate warnings or instructions were not provided with the E-Cig Products about the risks, dangers, and harms presented by the E-Cig Products. Nowhere does the product or packaging warn of risk of explosion. There were simply no warnings about the hazards inherent in the E-Cig Products;

    e.    The E-Cig Products were not reasonably safe and Defendants were negligent because adequate warnings or instructions were not provided after they were manufactured; and

    f.    The likelihood that the E-Cig Products would cause injuries similar to those of Joshua and the seriousness of those injuries rendered the warnings or instructions of the manufacturer inadequate and the manufacturer could have provided adequate warnings or instructions.

39.    Defendants LG and Does 1-100, inclusive, are strictly liable because the E-Cig Products did not conform to Defendants' express or implied warranties.

40.    Defendant New Way is liable because the E-Cig products did not conform to Defendant's express warranties.

41.    Defendants LG and Does 1-100, inclusive, are strictly liable because the E-Cig Products materially deviated from the design specifications or performance standards of the manufacturer, and materially deviated from otherwise identical units of the same product line, to

an extent beyond that which would be contemplated by the ordinary consumer.

42. Does 1-100s', inclusive, conduct described herein was undertaken by its officers or managing agents, who were responsible for the design, manufacture, marketing, wholesaling, retailing, distributing, packaging, and warnings regarding use of the E-Cig Products. The aforementioned conduct of said managing agents and individuals was therefore undertaken on behalf of Does 1-100, inclusive. Said Does 1-100, inclusive, further had advance knowledge of the actions and conduct of these individuals whose actions and conduct were ratified, authorized, and approved by managing agents.

## VI. SECOND CAUSE OF ACTION
### (Negligence)

43. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full herein.

44. Defendants are product sellers within the meaning of RCW 7.72.010(1) and sold the E-Cig Products that are the subject of this action to the Plaintiff. The E-Cig Products purchased and used by the Plaintiff are products within the meaning of RCW 7.72.010(3).

45. Under RCW 7.72.040(1)(a), as a seller of goods to the public, Defendants had a duty to use reasonable care in providing information and warnings to the users of the E-Cig Products regarding dangers associated with the use of the E-Cig Products of which Defendants were aware, or should have been aware, in the exercise of reasonable care.

46. Defendants had a duty to use reasonable care to provide products which would be safe when used.

47. Defendants knew, or should have known, of the dangers of using the E-Cig Products. Despite such knowledge, Defendants failed to use due care to warn of the dangers of the

E-Cig Products.

48. Defendants knew or should have known that its products would be purchased and used by consumers who expected the products to be safe.

49. Defendants were negligent in failing to provide adequate warnings and instructions to users of the dangers associated with the use of the E-Cig Products.

50. Defendants were negligent in providing the E-Cig Products to consumers. In the exercise of reasonable care, Defendants knew or should have known of the risk of danger to consumers.

## VII. PROXIMATE CAUSE & DAMAGES

51. Plaintiff refers to each and every preceding paragraph and incorporates those paragraphs as though set forth in full herein.

52. As a direct and proximate result of the tortious conduct of Defendants and Does 1-100s, inclusive, as set forth above, Joshua sustained serious, ongoing, permanent injuries.

53. As a further direct and proximate result of the conduct of the Defendants as set forth above, the injuries sustained by Joshua are painful, permanent, and disabling, and have necessitated extensive medical care in the past and will continue to require such care in the future.

54. As a further direct and proximate result of his injuries, Joshua has sustained medical expenses, lost earnings, out of pocket expenses, and costs. With reasonable probability, Joshua will continue to sustain medical expenses, future life care costs and expenses, and other out-of-pocket costs and expenses as a result of his serious injuries.

55. As a further direct and proximate result of his injuries, Joshua has suffered loss of enjoyment of life, pain and suffering, disability and disfigurement and with reasonable probability will continue to suffer loss of enjoyment of life, pain and suffering, disability and disfigurement

in the future.

## VIII. PRAYER

Wherefore, Plaintiff Joshua Death, prays for judgment against the Defendants, jointly and severally, including:

1. General damages, including pain and suffering, in an amount to be determined at the time of trial;

2. Special damages including, but not limited to, damages for past and future medical care, lost earnings and lost earning capacity in an amount to be determined at the time of trial;

3. Property Damage according to proof;

4. Prejudgment interest according to proof;

5. Costs of suit; and

6. Such other and further relief as the Court deems proper.

DATED this 1st day of May, 2018.

LAW OFFICES OF JAMES S. ROGERS

*/s/ Heather Cover*
James S. Rogers, WSBA #5335
Heather M. Cover, WSBA #52146
Attorneys for Plaintiff

AMENDED COMPLAINT FOR DAMAGES – 13

LAW OFFICES OF JAMES S. ROGERS
1500 Fourth Avenue, Suite 500
Seattle WA 98101
Ph: 206/621-8525 Fax: 206/223-8224

FROM: Bryant Velasquez <bvelasquez@scottishamerican.com>
TO: claims@premierclaimsllc.com; claims@meadowbrook.com
CC: scotam-west@bindhqmail.com
SENT: Friday, May 04, 2018 1:13:57 PM Eastern Daylight Time
SUBJECT: External Email: New Claim For Shane Mabury DBA: New Way VaporsUSA4131156 UCHSE281701
ATTACHMENTS: Claim#1.pdf;
==========================================================

DOL: 05/19/16

Please see attached loss notice for the captioned account.

Please acknowledge receipt of claim by providing a claim number and contact information for assigned examiner.

Thank you for your assistance.


Best Regards,
Bryant Velazquez | Claims Rep.


SCOTTISH AMERICAN

2002 E McFadden Suite 100
Santa Ana, CA 92705
Email: bvelasquez@scottishamerican.com
http://www.scottishamerican.com
License No. 0705050 | Office: 714.550.5050 | Ext: 0275