|    |    |
|----|----|
| 1  | HONORABLE RONALD B. LEIGHTON |
| 2  |    |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOSHUA DEATH,

        Plaintiff,

  v.

TAMMY ANNE MABRY, et al.,

        Defendants.

CASE NO. C18-5444 RBL

ORDER

THIS MATTER is before the Court on Defendant LG Chem's Motion to Dismiss for lack of personal jurisdiction [Dkt. # 10] and on Plaintiff Death's Motion to Amend [Dkt. # 11], which, he claims, will moot the prior motion. LG Chem claims that even Death's amended complaint is insufficient as a matter of law to establish this Court's personal jurisdiction over it.

This is a product liability action. Death was injured when an electronic cigarette device (a "Mod" known as "The Infected," which he won in a Tacoma raffle) exploded. Death purchased a battery for his device at Defendant New Way in Port Orchard, and he claims that the battery caused the explosion. The after-market battery he purchased is known as an "MXJO IMR 18650." Death alleges in his initial complaint that LG Chem manufactured the defective battery.

LG Chem, a South Korean corporation, claims that "MXJO" is instead a "brand of" Shenzen MXJO in Shenzen, Guangdong, China. LG Chem claims it has no relationship with Shenzen MXJO and that Shenzen MXJO is not authorized to distribute LG Chem batteries "wrapped" as MXJO batteries—though it concedes that the "MXJO" re-chargeable batteries available in vape shops are sometimes LG Chem batteries altered and re-wrapped, without its authorization.

In any event, LG Chem argues that it does not manufacture, sell, or distribute rechargeable, replaceable lithium-ion batteries for use by consumers in e-cigarettes. Instead, it manufactures such batteries designed and sold for use in specific applications by sophisticated companies, not by consumers. LG Chem argues that it has no place of business here, is not headquartered or incorporated here, has no office or real estate interests here, has no banking relationships here, and has never had mailing address or phone number here.

It argues that this Court does not have personal jurisdiction over it as a matter of law, and asks the Court to dismiss Death's claims against it.

In response, Death seeks to amend his complaint to adding factual allegations he claims are sufficient (if his current complaint is not) to establish specific personal jurisdiction over LG Chem. Specifically, he seeks to allege that LG Chem sells to third parties "substandard" batteries manufactured at its plant, and that those parties in turn re-wrap or "disguise" the batteries and place them into the stream of commerce. He claims LG Chem "turned a blind eye" to this "rampant" practice. He argues that by indirectly placing these batteries into the stream of commerce LG Chem knew that its transactions could have consequences in Washington, and that this is enough to establish that it purposefully availed itself of the privilege of doing business here.

LG Chem opposes amendment, arguing that the new complaint does not and cannot cure the jurisdictional defect and that amendment would therefore be futile. It reiterates its request for dismissal for lack of jurisdiction.

**A. Standard for Leave to Amend.**

Leave to amend a complaint under Fed. R. Civ. P. 15(a) "shall be freely given when justice so requires." *Carvalho v. Equifax Info. Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). In determining whether to grant leave under Rule 15, courts consider five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011) (emphasis added). Among these factors, prejudice to the opposing party carries the greatest weight. *Eminence Capital,* 316 F.3d at 1052.

A proposed amendment is futile "if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Gaskill v. Travelers Ins. Co.*, No. 11-cv-05847-RJB, 2012 WL 1605221, at *2 (W.D. Wash. May 8, 2012) (citing *Sweaney v. Ada County, Idaho*, 119 F.3d 1385, 1393 (9th Cir.1997)).

**B. Personal Jurisdiction Standards.**

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff cannot simply rest on the bare allegations of its complaint, but rather is obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction. *Amba Marketing Systems, Inc. v. Jobar International, Inc.,* 551 F.2d 784, 787 (9th Cir. 1977). Where the motion is based on written

materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Schwarzenegger*, 374 F.3d at 800. A prima facie showing means that the plaintiff has produced admissible evidence, which if believed, is sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir. 1995). Conflicts in affidavits must be resolved in the plaintiff's favor. *Id.*

A court's personal jurisdiction analysis begins with the "long-arm" statute of the state in which the court sits. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1123 (9th Cir. 2002). Washington's long-arm statute extends the court's personal jurisdiction to the broadest reach that the United States Constitution permits. *Byron Nelson Co. v. Orchard Management Corp.,* 95 Wn.App. 462, 465 (1999). Because Washington's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analysis under state law and federal due process are the same. *Schwarzenegger*, 374 F.3d at 800–01.

To exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the relevant forum state such that exercising jurisdiction "does not offend traditional notions of fair play and substantial justice." *Schwarzenegger*, 374 F.3d at 801, citing *International Shoe v. Washington*, 326 U.S. 310, 316 (1945). In determining whether a defendant has the required minimum contacts, courts focus on the relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186 (1977). Personal jurisdiction exists in two forms, general and specific. *Dole Food Co. v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002). As is typically the case, general jurisdiction is not at issue here.

To establish specific jurisdiction, the plaintiff must show that: (1) defendant purposefully availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits

and protections of its laws; (2) plaintiff's claims arise out of defendant's forum-related activities; and (3) the exercise of jurisdiction would be reasonable. *Easter v. American West Financial,* 381 F.3d 948, 960–61 (9th Cir. 2004); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). If the plaintiff makes a sufficient showing as to the first two prongs, the burden shifts to the defendant.

The purposeful availment prong considers whether the defendant's conduct has invoked the forum state's benefits and protections "such that [the defendant] should reasonably anticipate being haled into court there." *Lake v. Lake,* 817 F.2d 1416, 1421 (9th Cir. 1987) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297. A defendant "purposefully avails" itself of a forum when it acts in a way that creates a "substantial connection" with the state, *Burger King,* 471 U.S. 462, 475 (1985), as where it deliberately engages in significant activities there, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 781 (1984), or creates "continuing obligations" between himself and the forum state's residents. *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 648 (1950). This prong is not met where the defendant's contacts with the state are "random, fortuitous or attenuated," or where they are the result of the unilateral activity of another party or a third person. *Burger King* at 475.

With respect to the second prong—whether jurisdiction is "reasonable" and comports with "fair play and substantial justice"—the Court has identified several factors: (1) the forum state's interest in adjudicating the dispute; (2) the plaintiff's interest in obtaining convenient and effective relief; (3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (4) the shared interest of the several states in furthering fundamental social policies. *See Wright, Kane & Miller*, 4 Fed. Prac. & Proc. Civ. § 1067.2 (4th ed. 2018).

## C. Discussion.

As an initial, practical matter, Death's Motion for Leave to Amend his complaint [Dkt. # 11] is **GRANTED**. The Court will measure Death's second amended complaint against the standards above for purposes of the motion to dismiss for lack of personal jurisdiction.

Death's primary jurisdictional hook is his allegation that LG Chem knowingly placed batteries it manufactured into the stream of commerce. He argues that the "unauthorized" distribution of its batteries is enough, given LG Chem's knowledge of the conduct and its acceptance of the benefits of Washington's availability as a market for its substandard batteries. He claim is that in such circumstances, it is "only fitting that [LG Chem] be amenable to suit here." *Citing Luv N' Care v. Insta-Mix*, 438 F3d 465, 470 (5th Cir. 2006).

In addition to the usual "core" jurisdiction cases, both parties cite and rely on the relatively recent "stream of commerce" cases, including the Supreme Court's "fragmented" decision in *J. McIntyre Machinery Ltd. V. Nicastro*, 564 U.S. 873, 889 (2011), and subsequent Washington Supreme Court case interpreting and applying it: *State of Washington v. LG Electronics*, 375 P.3d 1035 (2016) and *Noll v. American Biltrite, Inc.*, 188 Wash.2d 402, 395 P.3d 1021 (2017).

Death correctly argues that Justice Breyer's *J. McIntyre* concurrence represents the Court's holding. His opinion held that, without "something more," specific personal jurisdiction over a foreign manufacturer is *not* proper where a *single* injury-causing product enters the market through an independent nationwide distribution system. It acknowledged that if a substantial volume of sales took place, in part of the "regular flow of commerce," specific personal jurisdiction could be proper. *See* 564 U.S. at 889-90.

In *LG Electronics*, the Washington Supreme Court recognized that Justice Breyer's opinion was the holding on the narrowest possible ground. There, Washington sued a global

group of cathode ray rubes (CRTs), alleging that they were price fixing. Washington claimed they consciously did so with the knowledge and intent that "millions" of CRTs would find their way into Washington, and thus that personal jurisdiction was proper. LG disagreed. The Supreme Court traced the history of "stream of commerce" jurisdiction, including *Asahi Metal Industry v Superior Court of California*, 480 U.S. 102, 120-21 (1987) and *J. McIntyre*. It reasoned that *J. McIntyre* did "not foreclose an exercise of personal jurisdiction over a foreign defendant where a substantial volume of sales took place in a state as part of the regular flow of commerce." *Id*. at 1042. It held that the State's complaint sufficiently established a prima facie case of purposeful minimum contacts: the defendants sold CRTs into the stream of commerce with the intent they would be incorporated into millions of products, and with the intent that would inflate the cost of such products in Washington. *Id*. The presence of millions of CRTs in Washington was not the result of chance or the random acts of third parties, but were instead a fundamental attribute of the defendants' business. *Id*.

Six months later, *Noll* rejected the exercise of specific personal jurisdiction where a Wisconsin supplier (Special Electric) sold asbestos to a California manufacturer (Certain-Teed), which in turn sold products in Washington. Plaintiff Noll worked with Certain-Teed's products here. He developed mesothelioma. He sued and Special Electric claimed that the Washington Court did not have personal jurisdiction over it. The Washington Supreme Court agreed, relying on *J. McIntyre*: Noll did not allege that Special did *any* act to purposefully avail itself of the privilege of doing business in Washington. Special's only connection to Washington was through the unilateral act of a third party, Certain-Teed. Special did not sell products here, it was not aware that Certain-Teed did so, and its delivery of large quantities of asbestos into California

was not sufficient to say that it purposefully availed itself of the privilege of doing business here. *Noll* at 1028.

Death argues that these authorities support his claim of jurisdiction. He argues that LG Chem's placement of its batteries in Washington is not a single act, and it is not random or fortuitous; LG Chem expected (and hoped) that the regular flow of commerce would lead them to Washington. He argues that it is the quality and nature of the activities, not some mechanical standard, that inform the purposeful availment question. He claims that he can show LG Chem purposefully availed itself of the protections of Washington law by initiating conduct outside the state, because it "contemplated that some phase of it would take place" in Washington. *See CTVC of Hawaii Co. Ltd. V. Shinawatra*, 82 Wash. App. 699, 707 (1996). He emphasizes his unrebutted allegation that LG Chem was "aware of" the widespread practice of the purchase, re-wrapping and sale of its substandard batteries, including into Washington. It claims this is enough to establish the purposeful availment element of specific personal jurisdiction.

LG Chem agrees that these are the relevant authorities, but it strenuously disagrees with their application to Death's allegations here. It emphasizes that even his amended complaint does not point to a single act it undertook to place its products here. Instead, even Death claims that some unidentified third party took its batteries after they were placed into the stream of commerce, "disguised" them, and only then distributed them into Washington[1], through unidentified channels. It argues that "mere foreseeability" that a product may end up in the forum is not enough, and unilateral acts of a third party are not enough. Instead, the inquiry focusses on contacts between the defendant and the forum. *Citing Noll and distinguishing LG Electronics*.

---

[1] LG Chem also points out that jurisdiction in tort cases turns in part on the tortious act, which necessarily involves the plaintiff's actual injury. Death was not injured here; he was injured in South Dakota.

1 | Furthermore, not only has Death failed to identify any contacts or conduct tying LG Chem to
2 | Washington, he concedes that this is not a regular supply or distribution chain: the third party
3 | responsible for bringing the batteries here is "unidentified" and it consciously "disguised" its
4 | product.
5 | Even Death's proposed second amended complaint does not allege facts that are
6 | sufficient to establish specific personal jurisdiction under these authorities. It is true that the
7 | presence of MXJO batteries here is more than the single transaction deemed insufficient in *J.*
8 | *McIntyre*. But "turning a blind eye" to what is effectively a black market is something far less
9 | than the CRT manufacturers' collective conduct deemed sufficient in *LG Eletronics*. As LG
10 | Chem repeats, Death has alleged only unilateral acts of an unidentified third party; he has not
11 | described one act by LG Chem. And that has not been enough to support the assertion of specific
12 | personal jurisdiction, even under a stream of commerce theory, since *Burger King*.
13 | Death's request for additional discovery to support unidentified allegations he could
14 | make in a third amended complaint is DENIED. *Compare LG Electonics* (plaintiff's
15 | jurisdictional allegations were sufficient, but defendant was permitted to renew its motion after
16 | limited jurisdictional discovery).
17 | The Motion to Dismiss for lack of specific personal jurisdiction is GRANTED and
18 | Plaintiff Death's claims against Defendant LG Chem are DISMISSED without prejudice.
19 | IT IS SO ORDERED.
20 | Dated this 13th day of December, 2018.

Ronald B. Leighton
United States District Judge